Morning, Your Honor. My name is Carl Gunn. I'm representing Mr. Sellers in this appeal. I'm going to try to reserve two minutes of my time for rebuttal. I'll try to help you, but it's your primary response. I will try to keep track, Your Honor. Your Honors, there are two facts in this case that distinguish it from the other stash house robbery sting cases that are out there and the other selective prosecution cases. First on the selective issue, this is a selective enforcement case rather than a selective prosecution case. Second, on the outrageous government conduct issue, we have the additional factor here of noncompliance with agency standards in the form of that ATF manual that's in the record. Outrageous government conduct is a pretty tough standard. It is, Your Honor. It is. How many cases have there been that we found? There has been one Ninth Circuit case, a Third Circuit case, and also I think a very important case for the Court to consider, a district court case, Batres-Santolino, that this Court cited with approval in its Bogart case. So while that's not a Ninth Circuit opinion, it's one that's been approved of by the Ninth Circuit. When was that? That was, it's 521 F. Supp., Your Honor. I think it was in the early 1980s. Since then we've had black. Since then we've had black, Your Honor, and this case is different from black in multiple respects. First of all, we have this ATF manual. It's the government itself recognizes there's what's called a, quote, standard playbook, unquote, that the ATF uses. And that is basically set out in this script. And the script is designed, presumably, to distinguish real stash house robbers, real serious stash house robbers, from people who are merely opportunistic, jumping at the pot of gold, as I put it, at the end of the ATF rainbow. It includes guards that are described as, quote, extremely violent men, unquote, drug owners who are members of a Mexican drug cartel, and a cartel that's a, quote, organized violent group, unquote. Compare that to what the picture was that the agent painted here. He himself brought up the idea of whether a cartel owned these drugs and explicitly disavowed that. He said, oh, no, it's not a cartel. I wouldn't want to deal with them either. He didn't describe the guards as extremely violent men. He said they were armed. Yes, he probably had to do that to get the 924C counts he wanted. But they were, quote, older, unquote, or, quote, middle-aged, unquote, men. They were, quote, relaxed, unquote. They were so relaxed they left the door unlocked. So that's one big difference from black. We don't have that sort of comparison. And look at the factors in black also, your honors. There's some important differences that I'd like to talk about them in my briefs. But if I could, I'd like to highlight just two or three. Don't spend all your time on this, because you've got some complicated argument on discovery on the selective enforcement. All right, your honor. I won't. But one thing I did want to point out, though, is one of the factors they look at is the necessity that this is the only way you can catch stash house robbers. Well, I think a premise of that is that you have reason to think you're actually dealing with existing stash house robbers. And here, they didn't have that where they did in black. Remember, in black, these men were boasting about all the stash house robberies they did. Had it down to a science. The district court found here there was no evidence at all that these men had any experience or activity in stash house robberies, as opposed to just regular robberies. But let me move on, your honor, to the selective prosecution question. And that's, I think, the key difference here is it's not selective prosecution. Selective enforcement. Selective enforcement. And you have three circuits now, three different courts of appeals that recognize the difference between selective prosecution and selective enforcement, at least in the discovery context, which is all that we're talking about here on this appeal. They say, yeah, the standard's the same at the actual dismissal stage. But it's different at the discovery stage. Three different circuits. And there's good reasons for that, your honor. Recall one of the key premises of Armstrong and the cases which follow it is that, well, there's a presumption of regularity with prosecutors. They're officers of the court. We respect them. We don't intrude on their decisions. We intrude on decisions of law enforcement officers, if that's the right word, all the time. Their credibility is always up for grabs in court hearings. And courts often find them not credible. They can be sued. There's all sorts of differences between law enforcement officers and prosecutors. Second, the practicality of coming up with similarly situated individuals in the investigation stage is almost impossible. At the prosecution stage, there's at least two things you can do. You can look at people who are investigated but not charged. You can go to state court and look at the people. And often, that's our claims in the selective prosecution cases, that they're brought to federal court instead of state court. You can go to state court and collect the people who are prosecuted in state court. You can't do that. Under the Fourth Circuit rule, do you think that you would be entitled to more discovery? I'm sorry, Your Honor? Under the Fourth Circuit's rule, do you think you would be entitled to more discovery? Well, I guess it depends on how strictly you read the Fourth Circuit opinion in Hare. I mean, Hare basically said the limited discovery that was given there was enough. And the limited discovery there is probably comparable to the ATF manual that we got here. So maybe not. But I'm not sure that Hare was, you know, it's a little bit fact specific. And I'm not sure you can or should read Hare that narrowly, especially when it quoted and approved of the analysis in the Seventh Circuit Davis case. And of course, you have Davis and Washington. And Davis and Washington basically say, what we're going to do is we're going to kick this back to the district court and let the district court use its good judgment and take what they called, quote, measured steps, unquote, and sort of take a step here and see what that leads to, a step here and see what that leads to, a step here and see what that leads to. And on the selective prosecution issue, which the court only needs to reach if it doesn't rule in our favor on the outrageous conduct issue, I think that's the appropriate remedy to take, is say, recognize that Davis and Washington Hare established that selective enforcement discovery is different than selective prosecution discovery and kick it back to the district court for further inquiry. What would be the first step of those measured steps? Well, I think there's several here. And I think it's really something that you leave to the district court when the attorneys and everybody get back there in front of it. But one possibility would be the redacted portions of that ATF manual. The district court here said, I'm giving the parts that are relevant to entrapment, but I'm not giving anything else that might be relevant to selective prosecution. So I think a further examination of that manual in light of the Washington and Davis cases would be one step. A second possibility, the government in its brief at 31 lists some categories of documents the defense asked for in the district court. And it might be appropriate to give that a second look. Third possibility would be materials the court in its order at ER 38, page 25 of the district court order. It talks about some things it's not ordering disclosed. So I think those would be some good things for the district court to take a second look at on remand. I'm down under two minutes. You've got about two minutes. All right, great. Thank you. Thank you. Good morning, Your Honors. May it please the court. Ashley All for the United States. I'll start with your question, Judge Reinhart. Under any standard, I believe the defendant is not entitled to any more discovery than he already received in this case. I think even under the reasoning of the Fourth Circuit, the Seventh Circuit, and the Third Circuit, defendant, in fact, got more than any of those court of appeals decisions would have said that he got. Isn't that a discretionary matter for the district court? I agree with you that it is within the district court's discretion. But the question would be, was it an abuse of discretion per se not to have allowed defendant more than he got here? If he implied the wrong standard, we wouldn't really know what he would have done with the right standard. I think that's true. But if it's harmless under Rule 52, it would lead to the same place, which is to say that defendant wouldn't be entitled to more. But that's the difficulty, right? You set the standard first. So if the district court recognizes the distinction between selective prosecution and selective enforcement in the discovery context, then the district court can take a look at the requested discovery with new eyes. Why isn't that the appropriate approach? We're not well-equipped to go through the list of various potential documents and assess them ourselves. That's almost like engaging in the district court process. Because the district court here did give defendant so much, it is within this court's ability to determine whether that was, if we were applying any of the other circuits' cases, whether that was consistent with what they said was discoverable in those cases. Notably here, in addition to the ATF manual, large portions of the ATF manual, the district court also imposed no limitations on the cross-examination of special agent Carr. And as a result, the agent was cross-examined about whether or not race and socioeconomic status played any part in his investigation. Taking a step- I thought the district court based its decision on what to give based on a theory of entrapment, saying, as we just heard, I'll give you the entrapment information, but not selective enforcement information. So don't we need to find out what the district court would have done had the district court made the decision on what to give under selective enforcement? Again, I believe this court, based on this record, because the district court did allow discovery that overlaps with exactly the kind of discovery discussed by the other court of appeals decisions, can come to the conclusion that any error with respect to the legal standard, and I'll get to that next, of course, would be harmless, particularly because it's not just that the district court here allowed what the Seventh Circuit or the Fourth Circuit would say is- pardon me, the Third Circuit would say is step one, which is some inquiry into whether or not there's a basis to believe there was a prohibited factor taken into account. But went much further, and in fact, any of those cases would have ended with in-camera submission of the ATF manual, whereas here we had production of large portions of it. But getting to the real meat of the fight is about the standard. I recognize the other court of appeals decisions, but I believe they are incorrect in concluding that the standard for selective enforcement and selective prosecution are different. I believe there's no dispute that the underlying standard for the substantive claim is identical. This court's Lacey opinion so holds, even the Fourth Circuit has so recognized. And so the question is, does- even though the underlying equal protection standard is identical, is the discovery standard different? And I submit that the Seventh Circuit in Davis's reading of Armstrong on that front is flawed. The Seventh Circuit looks to the portion of Armstrong that talks about the discretion of the attorney general and of prosecutors and says that that is the portion of the opinion that It's simply not. That portion of Armstrong is discussing the underlying equal protection standard. And in my view, it's notable, as I said in the brief, that Armstrong relies on equal- pardon me- on selective enforcement cases interchangeably with selective prosecution. It relies upon Yick Woe. It relies upon Eisen. And I know in the reply brief, defendant has made fun of me for relying on cases from the 1800s, but that's also an Armstrong a defendant relied upon those cases before the district court. Even the Waite case, W-A-Y-T-E, which is where Armstrong quotes most of its language from this case, pardon me, in this respect, is a mixed enforcement prosecution case about people that didn't register for the draft. And so I really think the distinction does not hold up under scrutiny at all, particularly because the cases on which Armstrong relies are mixed. Moreover, its own discussion of the AG's authority, most of that also bears upon enforcement agencies. The ATF operates under the Attorney General. And while Armstrong cites statutes specific to the Attorney General and AUSAs, there are adjacent statutes about the authority of the ATF that would equally apply. And in the end, the question is, if the underlying- The difference really isn't there because prosecutors do have absolute immunity, and the other agents don't? The enforcement agents don't? That is true, but I don't think that bears upon the discovery standard here. And on my reading of Armstrong, ultimately what Armstrong discusses what the discovery standard is and why there is a correspondingly somewhat high showing that needs to be made is because the costs of discovery are very similar to the costs of the underlying claim because it requires the government to go through many of the same steps to defend itself. And as a result, because there is no dispute here, I believe that the underlying standard is the same. Under Armstrong's reasoning, also the discovery standard should be the same. I believe the district court did get that correctly. And I believe that the fifth- Pardon me, I keep saying fifth. The seventh, third, and to the extent Hare adopts it, fourth circuits, have just simply misread Armstrong. And they've read it in a way that it's irreconcilable with the cases on which Armstrong relies, which I think is particularly notable. And so in my view, the district court did not misapply the legal standard. And as a result, did not abuse its discretion in what we gave to the defendant here. On the black factors, just in brief, the manual the council has relied upon is a 2013 manual. This case, the investigation was in 2012. Both Special Agent Carr and Special Agent Van Vennacum later at trial described how this investigation was approved of the chain of command and was consistent with practice at the time. And I wanna take one step back and just indicate that there is something of a temporal oddity with this case. This case actually arose from a set of facts that were from the same time as the cases Dunlap and Flores. In Dunlap and Flores, this court has already overturned district court opinions that held similar investigations to be outrageous. But because of the timing of this case, even though this investigation was earlier, it's getting to the court much later. I'm not aware of any other pending cases like this right now from my office. Nevertheless, this case should be decided in the same way as Dunlap and Flores were decided, in which is to say it's not constitutionally outrageous. If the court has no further questions, the government would submit. Thank you, Your Honor. We'll give you your full two minutes instead of a minute and 44. Thank you, Your Honor. Just real quick on the ATF manual being old. I did want to point the court to the district court finding that, quote, it is likely that the ATF's practices respecting fictitious stash house robbery cases post-2013 are similar to its practices pre-2013. That's at ER 94. It does strike me also that what's good practice in 2013 was presumably good practice in 2012. I don't think that Dunlap and the Flores cases had the ATF manual in the record. But to go back to the selective prosecution issue, I think there's two key points I'd like to make. First of all, as far as the government's attack on the legal standard, I mean, we've got three circuits here that have all ruled that way. And there's really not a single circuit that's looked at that analysis and rejected it. So I think that's pretty persuasive. Second, in terms of what we might get here, if you look at that ATF manual, there's a lot of black in it, a lot of redacted stuff. And so I think that should be reviewed in light of the correct standard as opposed to the incorrect standard which was applied. There are also the other things I mentioned that are described in the record. There's also out there, we haven't talked about it, my motion for remand. We know there's some additional evidence out there that might be developed and considered. And our argument, of course, is this court has discretion to consider that in its decision about how and whether to remand. I'll submit it unless the court has other questions. Thank you, counsel. Thank you both very much. Very helpful argument. Thank you. OK, this argument is submitted. The next case for argument is.
judges: Reinhardt, Nguyen, Simon